**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

NOV 12 2009

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SHAO QUN FENG, | No. 07-71673 |
| Petitioner, | Agency No. A098-002-222 |
| v. | |
| ERIC H. HOLDER Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 6, 2009
Seattle, Washington

Before: PREGERSON and BEA, Circuit Judges, and MAHAN,[**] District Judge.

Shao Qun Feng ("Feng") appeals from the BIA's decision denying her

application for asylum. We have jurisdiction under 8 U.S.C. § 1252, and we

reverse.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable James C. Mahan, United States District Judge for the District of Nevada, sitting by designation.

The Board of Immigration Appeals ("BIA") conducted its own review of the evidence and law in this case. Accordingly, our review "'is limited to the BIA's decision, except to the extent the Immigration Judge's ("IJ's") opinion is expressly adopted.'" *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (quoting *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000)). We review an IJ's credibility determination for substantial evidence. *Malkandi v. Holder*, 576 F.3d 906, 908 (9th Cir. 2009).

A trier of fact must consider "the totality of the circumstances, and all relevant factors," in making a credibility determination. 8 U.S.C. § 1158(b)(1)(B)(iii). Here, the IJ's adverse credibility determination was based entirely on inconsistencies between the English-language declaration attached to the first asylum application and Feng's in-court testimony. That first asylum application should not have been accepted into evidence by the IJ at Feng's merits hearing because the statements it contained cannot be reliably attributed to Feng.

There is very little evidence that the attorney who submitted the first asylum application was authorized by Feng to do so. Feng was apprehended off the coast of Puerto Rico in a boat with twenty-four other Chinese citizens. While she was in detention in Puerto Rico, her family hired an attorney to represent her. She spoke to the attorney's Mandarin-speaking assistant on two occasions, for fifteen minutes

each time, but testified that she never saw or spoke with the actual attorney.  The IJ in Washington state had no record of any prior attorney representing Feng, and no other attorney filed a formal entry of appearance on her case.  *See* 8 C.F.R. § 1003.17(a) ("In any proceeding before an Immigration Judge in which the alien is represented, the attorney . . . shall file a Notice of Appearance . . . .").  Feng testified that she had no knowledge that the first attorney filed anything on her behalf.  There was insufficient evidence from which the court could conclude that this first attorney was authorized to represent Feng.

Generally, "[t]he applicant's signature establishes a presumption that the applicant is aware of the contents of the application."  8 C.F.R. § 208.3(c)(2).  That presumption is not triggered here.  Feng explained at her merits hearing that while she was detained in Puerto Rico, only the signature page of the first asylum application was sent to her for her signature.  More importantly, the signature page, as with the rest of the asylum application, is in English.  There is no evidence in the record indicating that Feng speaks or reads English.  At oral argument the government agreed that Feng does not speak or read English.  There is therefore no presumption that Feng was aware of the contents of that first application.

Furthermore, "faulty or unreliable translations can undermine the evidence on which an adverse credibility determination is based."  *He v. Ashcroft*, 328 F.3d

593, 597 (9th Cir. 2003) (citing *Balasubramanrim v. INS*, 143 F.3d 157, 162-64 (3d Cir. 1995)). It is undisputed that Feng speaks Cantonese and not Mandarin, the language spoken by the first attorney's assistant. The difference between these languages is significant enough that the first IJ before whom Feng appeared insured that Feng received a Cantonese and not a Mandarin interpreter. *See* Richard Warren Perry, *The Logic of the Modern Nation-State and the Legal Construction of Native American Tribal Identity*, 28 Ind. L. Rev. 547, 568 n.105 (1995) (noting that spoken Cantonese and Mandarin are not for the most part mutually intelligible); Cindy Collins, *Guests, Not Strangers . . . Refining the Inner 'Ear' to Strengthen Global Client Ties*, 18 No. 20 Of Counsel 14, 16 ("Chinese characters are the same in Mandarin and Cantonese but the pronunciations are radically different, depending on what part of the country the speaker is from."). The first asylum application was not sufficiently reliable because there is nothing to establish that Feng understood the language of the attorney's assistant.

The fact that some questions in the first asylum application were accurately answered does not affect our decision. The questions which were accurately answered were simple and perfunctory, including dates, locations and occupations, which are easier to translate. *See Singh v. INS*, 292 F.3d 1017, 1022 (9th Cir. 2002) (holding that where petitioner did not speak the same language of his

-4-

translator, the resulting translated statement which included accurate answers to some perfunctory questions "lacked sufficient indicia of reliability and accuracy on its own to constitute substantial evidence supporting an adverse credibility determination").[1]

Without the first asylum application, which never should have been admitted, substantial evidence does not support the IJ's adverse credibility finding. Feng testified consistently with the other record evidence that she suffered two forced abortions. The law is clear that suffering a forced abortion as part of a coercive population control measure constitutes past persecution. 8 U.S.C. § 1101(a)(42). The IJ agreed that, if Feng were considered credible, "she would have established past persecution and therefore would be granted asylum."

_____

[1] While the *Singh* court considered the reliability of statements made in an airport interview and not an asylum application, we believe that the *Singh* court's attention to the language difficulties experienced by the petitioner in that case to be key. The dissent is correct that the court in *Singh* examined other factors which buttressed the court's conclusion that the short airport interview conducted in a language the petitioner did not understand lacked "sufficient indicia of reliability and accuracy on its own to constitute substantial evidence supporting an adverse credibility determination." *Id.* at 1024. The dissent relies upon these other factors to distinguish this case from *Singh*. The *Singh* court's "principal concern," however, was how the language barriers undermined its confidence in the accuracy of the interview statements. *Id.* at 1022.

CONCLUSION

Substantial evidence does not support the adverse credibility finding in this

case. We reverse and remand to BIA for further proceedings on the merits of

Feng's asylum application, excising the first, tainted asylum application from the

evidence.[2]

REVERSED and REMANDED.

---

[2] Because we hold that substantial evidence did not support the IJ's adverse credibility and reverse on that basis, we do not reach the issue of Feng's claim of ineffective assistance of counsel.

BEA, Circuit Judge, dissenting.

I respectfully dissent. The IJ did not err when he admitted Feng's first asylum application into evidence because it contained sufficient indicia of reliability to allow a trier of fact to conclude the information in that asylum application came from Feng: accurate biological, family, education, and work history information.[1] Because Feng's answers in her first application were inconsistent with answers in her second application and with her asylum hearing testimony, there is substantial evidence in the record from which the IJ could have concluded Feng was not credible. Therefore, I would deny Feng's petition for review.

---

[1] Where would such *accurate* and *personal* information come from but from Feng? Sure, it is only circumstantial evidence Feng produced the information for the application, but as Henry David Thoreau said, "Some circumstantial evidence is very strong, as when you find a trout in the milk." Henry David Thoreau, Journal, Nov. 11, 1850, 2 Journal of Henry D. Thoreau 94 (Bradford Torrey & Francis H. Allen eds. 1962). The amount of accurate personal information in Feng's first application is strong circumstantial evidence Feng produced it, especially in view the record does not establish any other source for the information transmitted by the retained attorney's assistant. Remember, there was no evidence another Feng family member was supplying the information in a loud stage whisper.

The majority dedicates a substantial portion of its analysis to evidence that Feng did not understand the language used to prepare the application and didn't know what she was signing. Not a word though as to *how* detailed personal information could have snuck into the application but for Feng. Nor is there any explanation *why* the application got the "kicked-down-the-stairs-by-a-government-official" story *wrong* but got her school's name and her son's birth date *right*.

1

United States immigration authorities apprehended Feng, a native and citizen of China, when she attempted to enter Puerto Rico. Feng's family hired an attorney they knew had a Mandarin-speaking assistant to prepare Feng's asylum application, and told Feng that her attorney had a Mandarin-speaking assistant. Feng spoke with the assistant twice by telephone for fifteen minutes each time, and Feng asked the assistant to prepare an asylum application for her. The attorney prepared Feng's asylum application and sent it to her. The application was written in English. There is no evidence in the record that Feng can read English, and no one translated the application for her. Nevertheless, she signed the signature page of the application. The attorney attempted to file the application, but it was rejected because Feng had not yet been served with a Notice to Appear. Later, Feng hired a new attorney who filed a second asylum application.

The primary basis for the IJ's adverse credibility finding was that there were inconsistencies between Feng's first asylum application and her asylum hearing testimony, as well as between Feng's first and second asylum applications. These inconsistencies are clear and undisputed. For example, Feng stated in her first asylum application that government officials came into her home and kicked her down the stairs, which caused the death of her fetus. However, Feng testified that a doctor discovered she was pregnant during a regular checkup and performed an

2

abortion over her objection.

This court must affirm an IJ's credibility determination if it is supported by substantial evidence. *Malkandi v. Holder*, 576 F.3d 906, 908 (9th Cir. 2009). Evidence that lacks sufficient indicia of reliability and accuracy does not constitute substantial evidence. *See Singh v. INS*, 292 F.3d 1017 (9th Cir. 2002). The majority holds the first application was not sufficiently reliable and cannot constitute substantial evidence because Feng speaks Cantonese whereas the attorney's assistant who interviewed Feng to prepare Feng's first application spoke Mandarin.

In *Singh*, the IJ found Singh not credible based on inconsistencies between Singh's statements during an airport interview with an INS officer and his testimony before the IJ. *Id.* at 1019. The translator who participated in the airport interview spoke Hindi, a language Singh, a native Punjabi speaker, understood only "a little." *Id.* at 1020. The government contended that "the accuracy of Singh's answers to some of the questions during the interview demonstrate[d] that translation was not a problem." *Id.* at 1022. However, this court explained that those questions "were simple in nature, involving such items as his name, place and date of birth." *Id.* The inconsistent answers were given in response to questions that presented greater translation difficulty, for example, "a legal term of

3

art such as 'persecution.'" *Id.* Therefore, this court held that the airport interview transcript "lacked sufficient indicia of reliability and accuracy on its own to constitute substantial evidence supporting an adverse credibility determination." *Id.* at 1022.

The instant case is distinguishable from *Singh*. Feng had multiple opportunities during her asylum hearing to explain the inconsistencies between her first application and both her second application and her testimony. But at no point did she state that she did not understand Mandarin or that she had difficulty communicating with the attorney's assistant. In fact, Feng testified that her relatives hired an attorney they knew had a Mandarin-speaking assistant. Singh, on the other hand, was forced to rely on the government-provided translator who spoke a language Singh spoke only "a little." *Id.*

Additionally, two factors this court relied upon to support its holding in *Singh* are not relevant in this case. First, the court in *Singh* explained that the questions asked during an airport interview are not designed to elicit as detailed a response as an asylum application. Therefore, the alien may later, in response to more detailed questions, reveal details that appear inconsistent with an airport interview. *Id.* at 1023. Second, the court in *Singh* explained that arriving aliens, particularly those who have been abused during interrogations by their

4

government, may be reluctant to share information with government officials upon their arrival to the United States. *Id.* at 1024. Here, however, Feng's inconsistent statements were not the product of an airport interview; rather, they were her responses to the questions in an asylum application. Further, Feng was not being interrogated by a government official—she was talking with the assistant of an attorney hired by her family.

Absent evidence of translation difficulties between Feng and the attorney's assistant, the IJ could have reasonably concluded, based on the accuracy of the responses in the first application, that Feng provided the information in the first application. The first application contained accurate responses to numerous questions, including her: first, middle, and last name; sex; marital status; date, city, and country of birth; nationality; date of entry into the U.S.; most recent address in China; husband's name and date of birth; son's name and date of birth; educational history, including the name and type of school; and parents' names and places of birth. On this basis, the IJ could have reasonably concluded the rest of the statements in the first application were also made by Feng.

Based on the inconsistencies between Feng's first application and both her second application and her testimony before the IJ, substantial evidence supports the IJ's finding that Feng was not credible. Therefore, I respectfully dissent.

5